**Edward Willis JOUETT, Jr., et al.,
Appellants,**

**v.**

**Melvin Richards RHORER et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 14, 1960.

Denney & Landrum, Edwin R. Denney, Charles Landrum, Jr., Lexington, for appellants.

Darrell B. Hancock, Fowler, Rouse, Measle & Bell, Lexington, for appellees and cross-appellants.

STEWART, Judge.

Appellant, Marjorie Hall Jouett, and appellee-cross-appellant, Huber C. Rhorer, Jr., were divorced in July, 1954. The custody of their child, Melvin Richards Rhorer, then almost two years old, was given to the mother, without any visitation privileges allowed to the father and without any support to be furnished the child by the latter. In May, 1957, the mother married appellant, Edward Willis Jouett, Jr.

On May 29, 1959, appellant, Edward Willis Jouett, Jr., filed in the Fayette Circuit Court a petition whereby he sought to adopt his stepson, Melvin Richards Rhorer; and appellant, Marjorie Hall Jouett, his wife and the natural mother of the child, joined therein as plaintiff and asked that the parental rights of the natural father (Huber C. Rhorer, Jr.) be terminated. See KRS 199.600(5). Such termination was sought on the ground that the child was "neglected" in that "parental care or control of

any sort by the defendant father will injure or endanger the morals, health or welfare of said child."

On November 3, 1959, the lower court entered a judgment that: (1) dismissed that part of the petition seeking to terminate the rights of the natural father in and to the child; (2) granted adoption of the child by the stepfather, bestowing upon him all the rights and privileges of a natural father; (3) awarded visitation rights to the paternal grandfather on alternate Sundays; and (4) retained control over the visitation rights of the father in order to pass upon such rights in the future.

The Jouetts appeal from that portion of the judgment which does not terminate the parental rights of the natural father and which allows visitation privileges to the paternal grandfather and retains control of such privileges as to the natural father. The natural father cross-appeals from the order of adoption, claiming it to be void for reasons advanced hereinafter. We shall first give our attention to the cross-appeal.

The right of adoption is in force in Kentucky only by virtue of statute. In this connection we said in Stanfield v. Willoughby, Ky., 286 S.W.2d 908, 53 A.L.R.2d 925: "In 1940, the Legislature enacted a law that was intended to be a comprehensive and all inclusive statute on the subject of adoption. * * * Even a casual reading of this Act in its original form will convince one that the legislative intent in the passage of the Act was to place a minor when adopted on the same basis as a child born into the family * * *." This Court also adheres to the rule of strict compliance with the statutory law pertaining to adoption. Higgason v. Henry, Ky., 313 S.W.2d 275.

Let us now give our consideration to those portions of the Adoption Act (KRS 199.470 to 199.630) which are applicable to or bear upon the case at bar.

Certain provisions of KRS 199.500, pertinent to this action, read:

"(1) No adoption shall be granted without the sworn consent of the living parent or parents of a legitimate child or the mother of the child born out of wedlock, except that such consent of the living parent or parents shall not be required if:

\*   \*   \*   \*   \*   \*

"(b) The parental rights of such parents have been terminated under KRS 199.600 to 199.630; * * *.

\*   \*   \*   \*   \*   \*

"(4) Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child *if it is pleaded and proved* as a part of the adoption proceedings that any of the provisions of subsections (1) or (2) of KRS 199.600 exist with respect to such child." (Emphasis added.)

The two subsections of KRS 199.600 provide for involuntary termination of parental rights and read:

"(1) In a proceeding involving a neglected or abandoned child, as defined in KRS 199.011, the circuit court may terminate all parental rights of the parents of such child, and declare the child to be a ward of the state, and may vest the care, custody and control of the child in the department, or in any licensed child-caring or child-placing agency or institution, if facilities are available to receive the child, if it is pleaded and proved in a private hearing that (a) the parents have abandoned or deserted the child, or (b) have substantially and continuously or repeatedly refused, or being able have neglected, to give the child parental care and protection, or (c) that the child is neglected and that the parents have been adjudged mentally incompetent to retain their parental rights and such judgment has been in effect for

not less than one year. (Letters in parenthesis supplied.)

"(2) If the circumstances described in subsection (1) of this section exist with respect to only one of the two legitimate parents, the parental rights of that parent may be terminated, in which case the child shall not be declared to be a ward of the state, unless with the voluntary consent of the other parent."

There has been no consent given to the adoption of the infant upon the part of his natural father, with the result that this is an adversary proceeding which undertakes to secure an order of adoption of such infant based upon a finding of the trial court that there has been an involuntary termination of the parental rights of the natural father within the purview of KRS 199.600 (1). Hence it follows that the order of adoption granted is valid only in the event that at least one of the three conditions mentioned in this subsection, and denominated (a), (b) and (c), has been established, which conditions constitute exceptions to the fundamental requirement of a sworn written consent of the parent in question.

KRS 199.011(5) states that a " 'Neglected or dependent child' means any child who is under such improper parental care and control or guardianship as to injure or endanger the morals, health or welfare of himself or others."

■ As heretofore mentioned, the petition which asks an adjudication that the parental rights of the natural father be terminated sets forth the allegation in substance that the infant is a "neglected child" in the sense that "parental care or control of any sort by the defendant father will injure or endanger the morals, health or welfare of said child." The language last quoted was lifted from KRS 199.011 (5), the subsection that sets forth the definition of a neglected or dependent child within the meaning of the Adoption Act.

This averment is relied upon as the sole ground, if proven, for the entry of an order divesting the natural father of his rights in the child. Actually, the allegation in question states as a basis for severing the parental rights of the natural father a reason which is not contained in KRS 199.600(1). Bare neglect is not a sufficient statutory ground for such a severing.

Furthermore, even though a sufficient ground was not alleged in the petition in respect to the provisions of KRS 199.600 (1), there was a failure of proof to establish any such ground, assuming this proceeding was tried by the express or implied consent of the parties as if a sufficient ground to obtain the type of relief under discussion had been raised by the pleadings. See CR 15.02.

■ We must hold, for the reasons shown, that the order of adoption entered was prejudicially erroneous.

As there will be in all probability another hearing in this proceeding, we deem it necessary to devote some discussion to the contentions made by the Jouetts. The question is raised by them as to whether a trial court can grant an adoption, the best interest of the child requiring such, and yet provide that the natural father, as in this case, shall retain his parental rights in and to the child. A further inquiry is whether the lower court properly subjected the child to visitation by the parental grandfather and correctly reserved the right to grant such a privilege to the natural father in the judge's discretion. It is our view the trial judge committed a reversible error when he imposed the conditions complained of by the Jouetts.

■ According to KRS 199.530(2) a child when adopted shall be freed from all legal obligation of obedience to the parents or parent from whom it is severed. KRS 199.520 reads in part: " * * * In the judgment the name of the child shall be changed to conform with the prayer of the petition. The judgment and all orders

required to be entered and recorded in the order book, including the caption, shall contain only the names of the petitioners and the proposed adopted name of the child, without any reference whatsoever to its former name or the names of its birth parents." Also, KRS 199.570(3) provides for a new birth certificate to be issued, with the new name of the child, and which shows the child to be the actual child of the adopting parents the same as if born to their bodies.

■ From the foregoing provisions of law it seems clear to us the Legislature intended that the adoption of a child necessarily brings to an end all connections, legal and personal, with any natural parent. If a child is subject to the parental control of two families—which are alien and often hostile to each other—the resulting injuries to the child's emotions and future well-being are a matter of deep concern to the public. It is for this reason so many courts have held that public policy demands that an adoption shall carry with it a complete breaking off of old ties. We believe this is a sound view and we hereby adopt it. Therefore we conclude the retention by the natural parent, by virtue of court sanction, of any semblance of parental authority over an adopted child, which is taken from such parent by judicial decree, is repugnant to the very spirit of the Adoption Act.

The second alleged error advanced by the Jouetts is that visitation privileges should not have been granted to any member of the natural father's family and that any control over the child in such respect should not have been retained by the trial judge to be passed upon at a later date. The case of Spencer v. Franks, 173 Md. 73, 195 A. 306, 308, 114 A.L.R. 263, dealt with this phrase which was added to an adoption decree: "With leave to parents to occasionally see the child." The Maryland Court of Appeals struck the phrase from the order of adoption, and used this language as a line of reasoning for declaring the phrase unwarranted:

"It was not the intention of the statute that after the decree of adoption the court should be invested with continuous authority in the cause thenceforth to entertain therein applications made from time to time, by the natural parents, for a fresh order, for an interpretation of the original order, or its change or modification on proof of the altered circumstances of the natural or adoptive parents, and to grant any such application which may appear to be warranted by the evidence. The plain and express words of the statute indicated the intention of the Legislature that the original decree, if within the granted authority, was to be taken as final and binding. With the entry of the final decree of adoption and its enrollment, the chancellor has, for most purposes, exhausted the jurisdiction of the court."

This Court entertains the highest regard for the feelings and thoughts that motivated the learned trial judge to place the conditions we have discussed in the adoption order. But we believe the parental ties of the natural father must be broken off once and for all and any demands of the paternal grandfather as to the child must be prohibited henceforth. It is our considered opinion the best interest and welfare of the child will be best served if it is permanently separated from all influence and contact with the natural father and his family. If and when an order of adoption is made, the adoption should be granted without any reservations whatsoever.

■ If there should be a new trial of this case the trial judge should make brief, definite and pertinent findings of fact and conclusions of law upon the contested matters involved in this proceeding. Not only are such findings and conclusions extremely helpful in assisting this Court to reach a correct decision of the points placed in issue but such a course of action is required of the trial judge in this type of case under

CR 52.01. See Standard Farm Stores v. Dixon et al., Ky., 339 S.W.2d 440.

Wherefore, the judgment is reversed on the appeal and on the cross-appeal, and the case is remanded for any further proceedings consistent with this opinion.