Thomas Bertram ARCIERO (Formerly Thomas Bertram Lively), Appellant,

v.

Janice Belle HAGER et al., Appellees.

Court of Appeals of Kentucky.

Dec. 10, 1965.

Davis Williams, Munfordville, for appellant.

Richardson & Goodman, C. B. Dowling, Munfordville, for appellees.

DAVIS, Commissioner.

This appeal presents the question whether appellant, who was adopted in New York in 1946 by his stepfather and his natural mother, may inherit from his great-uncle by blood on his paternal side. The great-uncle died intestate in Kentucky on November 4, 1959. The lower court adjudged that appellant could not inherit from the great-uncle, hence this appeal.

The parties recognize that but for the adoption the appellant would inherit from his great-uncle pursuant to KRS 391.030. It is further conceded that had there been no change in the adoption statutes of Kentucky since appellant's adoption in New York, the appellant would have the right to inherit. The adoption statute of New York appears to preserve the right of the adopted child to inherit from its natural parents—and for purposes of this opinion we will assume, without deciding, that the New York adoption statute, both at the time of the adoption and at the time of the death of the great-uncle of appellant, permits the adopted person to inherit from his natural kindred by blood, despite the adoption.

In order to resolve the question before us we need to determine whether the law of New York or the law of Kentucky controls. If the Kentucky law controls, then we must ascertain which Kentucky law controls— the law as it was in 1946, when the adoption occurred, or the law as it was in 1959 when the great-uncle died.

It seems to be well settled that the status of the adopted person is determined by the law of the forum of the adoption proceedings, unless the status so created or the rights flowing from the status are repugnant to the public policy of another state in which they are sought to be enforced. Commonwealth v. Kirk, 212 Ky.

646, 279 S.W. 1091, 44 A.L.R. 816; Pyle v. Fischer, 278 Ky. 287, 128 S.W.2d 726; Restatement, Conflict of Laws, § 142; 2 Am.Jur.2d Adoption, § 12. But the rights of inheritance of the adopted child are generally governed by the law of the state in which the property is situated, if real property, or the domicil of the decedent if personal. This principle is thus phrased in 2 Am.Jur.2d Adoption, § 12, p. 870:

"However, the extraterritorial effect of a foreign adoption decree is limited by the principle that the descent of real property is to be governed by the law of the situs of the property, and the descent of personal property by the law of the domicil of the decedent."

The problem is dealt with in greater depth in 2 Am.Jur.2d Adoption, §§ 114, 115. In the latter section the following expression appears:

"According to the better view and weight of authority the rights of inheritance of the child as an adopted child, and the extent of such right of inheritance, will be determined, not by the law of the state where the adoption took place, but in the case of real property by the law of the state where the property is located, and in the distribution of personal property by the law of the domicil of the intestate owner, *at the time of his death.* This rule is applied regardless of whether the local law enlarges the rights of the adopted child as fixed by the law of the state where the adoption took place and confers rights of inheritance where none existed in the state of adoption or diminishes such rights. The fact that an adopted child can inherit under the law of the state of his adoption will not enable the child to inherit property in another state under the laws of which a child, if adopted in that state, cannot inherit or can inherit only to a limited extent." (Emphasis added.) 2 Am.Jur.2d Adoption, § 115, pp. 957, 958.

The same rule is enunciated in Restatement, Conflict of Laws, § 305, Comment b., in which it is thus put:

" * * * If the law of the state of the decedent's domicil does not allow an adopted child to take a distributive share, he cannot do so, although the law of the state of adoption or of the state where a chattel is would allow him to take."

■ We regard the quoted principles as sound and adhere to them. It follows that Kentucky law governs in this case. It is conceded that at the time of the adoption (1946) the Kentucky law permitted an adopted child to inherit from its natural parents as well as from its adoptive parents. KRS 405.340 was then in force, and provided, in part:

"(9): Nothing in this section shall be so construed as to prevent the adopted child from inheriting under the general law in regard to descent and distribution from its natural parents."

■ In 1956, KRS 199.520 was enacted. In pertinent part the cited statute reads:

"(2) From and after the date of the judgment the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural, legitimate child of the parents adopting it the same as if born of their bodies. Except where a natural parent is the spouse of an adoptive parent an adopted child from the time of adoption shall have no legal relationship to its birth parents in respect to either personal or property rights."

We consider it plain that the quoted statute has the effect of excising the adopted child from its "blood" family tree. It is observed that the statute expressly provides that the adopted child shall have "no legal relationship to its birth parents in respect to either personal or property rights"—

*except* where a natural parent is the spouse of an adoptive parent. We do not construe that exception (as urged by appellant) as having the effect of leaving the adopted child in its birth family tree for all purposes; rather, we regard that exception as making it clear that the adopted child shall not lose its inheritance rights with respect to its natural parent who is a spouse of the adoptive parent. But for that saving clause it might be that the statute would have had the effect of terminating the adopted child's inheritance rights from its natural parent—even though that natural parent was the spouse of the adoptive parent.

It is said to be the general rule that the adopted child shall inherit from the natural parents unless the statute forecloses the right. Wailes v. Curators of Cent. College, 363 Mo. 932, 254 S.W.2d 645, 37 A.L.R.2d 326; 2 Am.Jur.2d Adoption, § 104. This court held in Villier v. Watson's Adm'x, 168 Ky. 631, 182 S.W. 869, L.R.A. 1918A, 820, that the adopted child did not lose its right of inheritance from the natural parents, but that was under a different statute.

We have recognized the principle that the present adoption law envisions a "complete breaking off of old ties." We have spoken of that approach as one demanded by public policy. Jouett v. Rhorer, Ky., 339 S.W.2d 865. In the just cited case the question had to do with visitation rights of a natural grandfather of the adopted child—that was spoken of as a "personal" tie that was severed. The opinion expressed the court's view, however, that " * * * the adoption of a child necessarily brings to an end all connections, legal and personal, with any natural parent." We consider that view to be the sound one and apply it now as respects the "legal" connection of inheritance.

We have no difficulty with the question as to whether the law existing in 1946 (time of adoption) or the law existing in 1959 (death of the intestate) is to control. In our view the law fixing the rights at the time of the death of the great-uncle is controlling. Breckinridge v. Skillman's Trustee, Ky., 330 S.W.2d 726. 2 Am.Jur.2d Adoption, § 109.

Appellant contends that the effect of the statute is to work attainder upon him in contravention of § 20, Ky. Constitution. We think the patent meaning of the constitution forecloses such an argument. § 20, Ky. Constitution, provides:

"No person shall be attained of treason or felony by the General Assembly, and no attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth."

The constitutional reference to bills of attainder relates only to punishment for crime; the statute now under consideration simply does not fall within the purview of the attainder section of our Constitution. 16 Am.Jur.2d Constitutional Law, §§ 411, 412.

Appellant asserts that KRS 199.520 (2) is unconstitutional because enacted in violation of § 51, Kentucky Constitution. Appellant points to the *heading* of KRS 199.520 as the title of the Act. However, that is *not* the Act's title, it is merely the caption as prepared by the statute reviser. KRS 446.140. Hence there is no merit in the contention as presented.

Neither is the legislation ex post facto within the meaning of § 19, Kentucky Constitution. Appellant had no fixed right to inherit under Kentucky law until the date of the death of the ancestor from whom inheritance is claimed. Obviously, no person has more than an expectancy or prospect of inheritance during the lifetime of the person from whom inheritance is claimed. It is fundamental that the legislature may modify the laws of descent without im-

pairing the rights of persons who would have inherited under an earlier law, so long as that modification occurs before the actual date of the inheritance.

The judgment is affirmed.