COMMONWEALTH of Kentucky, DEPARTMENT OF CHILD WELFARE, Appellant,

v.

Elmer Clyde HELTON et al., Appellees.

Court of Appeals of Kentucky.

Feb. 24, 1967.

Lynn T. Mitchell, Frankfort, for appellant.

Cordell H. Martin, Hindman, for appellees.

DAVIS, Commissioner.

This appeal presents the question of parental rights with respect to an infant. The trial court adjudged that appellees have the parental rights in the child; the appellant Department contends that the parental rights are vested in it.

On March 9, 1964, the child in question was born in Pikeville. The mother of the child is the present Mrs. Helton, one of the appellees herein (to whom we shall refer as Mrs. Helton). It is conceded by the parties that the true father of the infant is appellee Elmer Clyde Helton. At the time of the child's birth Mrs. Helton was lawfully married to Phillip Hall, from whom she had been separated for quite some time. At the time of the child's birth Mr. Helton had a lawful wife other than the mother of the child.

A child welfare worker employee of the Department was notified to come to the hospital in Pikeville to see the appellee,

Mrs. Helton. She testified as to the interview she had with appellee on that occasion, and said that appellee advised her that she desired to place the child for adoption. Accordingly, the welfare worker caused to be prepared a petition for voluntary termination of parental rights. KRS 199.620. The petition, duly subscribed by appellee, was filed in the Pike Circuit Court; Mrs. Helton appeared before the presiding judge of that court, and on March 19, 1964, there was entered an "Order Terminating Parental Rights and Order of Judgment" as prescribed by KRS 199.630. It is observed that the order recited that the matter had been heard on the petition of the "natural mother and legal father" of the child. Testimony in the record reflects that Hall, legal husband of Mrs. Helton, had also filed a petition for voluntary termination of his parental rights, although no authenticated copy of that petition appears of record before us. After the formal recitals, the order terminating parental rights provides, in part:

"It is ordered and adjudged that the Department of Child Welfare, Commonwealth of Kentucky, be and it is hereby awarded the full care, custody and control of [the named infant] ten days of age, and that all rights of said child's natural mother and legal father in and to said child be and they are hereby terminated."

The order terminating parental rights has never been modified. No direct attack upon it has been made by anyone at any time.

The child remained in the physical custody of the Department from March 19th, 1964, until September 4th, 1964, at which date the Department allowed the physical custody of the child to Mr. and Mrs. Helton. It is to be noted that Mrs. Helton and Mr. Helton had obtained divorces from their respective spouses and married each other on August 1st, 1964. Evidence by the Department was to the effect that it was clearly made known to the Heltons that the child was being delivered to them on a conditional

basis, and that the Department retained legal parental rights in and to the child. The Heltons testified that workers of the Department assured them that if they became lawfully married the child would be restored to them permanently.

On two or three occasions between September 4, 1964, and June 1965, the child was voluntarily delivered by the Heltons to a Department-approved boarding home. On the last occasion, the evidence warrants the conclusion that Mrs. Helton arranged for a Department worker to get the child shortly after midnight when Mr. Helton had left home to start his "owl" shift in the mine. Evidence was adduced for the Heltons to reflect that they can and will afford the child a suitable home. There was other testimony lending support to the proposition that the best interests of the child will be served by its being placed for adoption outside the Helton home. Our view of the case leads us to the conclusion that the evidence touching this point is not relevant or dispositive.

■ The order of the Pike Circuit Court terminated the parental rights of Mrs. Helton. Nothing has occurred which could be held to have legally restored those rights. So long as that order remains in force, Mrs. Helton stands at bar as a stranger to the child from a legal point of view. Although appellees place reliance upon Warner v. Ward, Ky., 401 S.W.2d 62, it is our view that the decision in Warner militates against the position of appellees here. In Warner there was no question of a judgment terminating parental rights; that was a situation in which a voluntary consent to adoption was held to be revocable in the circumstances presented. It is significant to observe that in Warner the court was at pains to point out that no question was presented of a judgment terminating parental rights, using this language:

"Appellants contend that consent is unnecessary when parental rights are terminated. KRS 199.500(4), 199.600. They did ask in their petition that Shirley Ann's parental rights be terminated, but they neither pleaded nor proved the matters set forth in KRS 199.600 as essential to such termination." Id., 401 S.W.2d at 64.

Although we are fully mindful of the claims which may be made in behalf of a mother's rights to her child, we are equally aware of the salutary purpose underlying the laws of adoption. Occasions do arise when parents realize the unhappy necessity of their surrendering parental rights, sometimes involuntarily (as prescribed by KRS 199.600), and sometimes voluntarily (as prescribed by KRS 199.620). The entire adoption program would be utterly frustrated if judgments terminating parental rights were to be lightly regarded. The prospective adoptive parents, the Department, and indeed the parents whose rights have been terminated would have no assurance of when or if an adoption could be effected if the termination were regarded as revocable. That this condition would militate against the best interests of the child and the public at large hardly needs elaboration.

■ Neither are we persuaded that Mr. Helton had any parental rights in the child. Although it appears to be conceded that he was the father of the child, it is certain that he was not the lawful husband of the child's mother at the time of the birth. Before he ever became the lawful husband of the mother, the child's mother and her then lawful husband had effectively terminated any parental rights they may have had. His subsequent marriage to her did not serve to establish parental rights in either of them as to the child. This circumstance distinguishes this case from Warner v. Ward, Ky., 401 S.W.2d 62. The trial judge had the view that KRS 391.090 served to legitimatize the child when the Heltons married. That statute relates to illegitimate children; the child involved in this litigation was born in lawful wedlock and has never been illegitimate. Hence, KRS 391.090 has no application.

In their complaint the Heltons sought the custody of the child and prayed that they be permitted to adopt the child. The trial judge conceived that adoption within the purview of KRS, Ch. 199 was unnecessary because he had the view that KRS 391.090 had the effect of making the Heltons the lawful parents for all purposes. In this, as we have said, we believe the trial court erred. In this state of case we reverse and remand for appropriate proceedings looking toward an adjudication of whether the Heltons are entitled to adopt the child as provided in KRS, Ch. 199.

The judgment is reversed for proceedings consistent with the opinion.

All concur.