**Glenn E. HICKS and Anna Rae Hicks, Appellants,**

v.

**Edwin E. ENLOW and Nancy Enlow, Appellees.**

**CABINET FOR HUMAN RESOURCES, COMMONWEALTH OF KENTUCKY, Appellant,**

v.

**Sandra SIEGEL, Appellee.**

**Carla Lynn Peyton HOWTON, Appellant,**

v.

**William Glenn BRANSON and Mildred Joyce Branson, Appellees.**

**Nos. 87–SC–895–DG, 88–SC–091–DG and 88–SC–0233–TG.**

Supreme Court of Kentucky.

Jan. 19, 1989.

Dennis L. Null, Mayfield, for appellants, Hickses.

James B. Brien, Jr., Neely & Brien, Mayfield, for appellees, Enlows.

Terry L. Morrison, Frankfort, for appellant, C.H.R.

Theodore Knoebber, Newport, for appellee, Siegel.

Pam Corbin, Little & Corbin, Madisonville, for appellant, Howton.

William A. Nisbet, III, Madisonville, for appellees, Bransons.

LEIBSON, Justice.

These are three separate cases which were heard together because of a common question of law. In two of these cases the issue is whether grandparents' rights to seek reasonable visitation as provided for in KRS 405.021 have been cutoff by legal adoption, and one, *C.H.R. v. Siegel,* involves involuntary termination procedures.

KRS 405.021(1), as presently constituted, states:

"The circuit court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so."

KRS 199.470–.590 provides the statutory procedure for "Adoption." The *first* sentence of KRS 199.520(2) provides:

"Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural child of the parents adopting it the same as if born of their bodies."

The *second* sentence of KRS 199.520(2) provides an exception to this mandate applying to stepparent adoptions. The exception is key to construing the impact of the statutory mandate on the grandparents' visitation statute. We will discuss it at length in the Opinion that follows.

The subsequent effect on grandparents' rights of a judgment granting involuntary termination of parental rights is now controlled by KRS 625.100. At the time of judgment in *C.H.R. v. Siegel,* the controlling statute was KRS 199.613(2) then stating as follows:

"Where parental rights have been terminated pursuant to KRS 199.601 to 199.617 all legal relationships between the parents and child shall cease to exist, the same as if the relationship of parent and child had never existed, except that the child shall retain the right to inherit from its parents under the laws of descent and distribution until the child is adopted."

This statute was repealed in the process of enacting the new Kentucky Unified Juvenile Code, Kentucky Acts 1986, Chapter 423, effective July 1, 1987. Section 106 of this new 1986 Juvenile Code in subpara-

graph (3) adopted verbatim the language of former KRS 199.613(2), quoted *supra.* This section of the Juvenile Code was further amended in 1988 to eliminate subparagraph (3). Nevertheless, the substance of subparagraph (3) has been retained by incorporating the following sentence in KRS 625.100, "Termination orders," in subparagraph (1):

"The order shall terminate all parental rights and obligations of such parent and release the child from all legal obligations to such parent and vest care and custody of the child in such person, agency or cabinet as the court believes best qualified."

The sum and substance of the termination statute is to "terminate" all parental connection with no exceptions such as provided in KRS 199.520(2) for stepparent adoptions. There was good reason for making no exceptions in involuntary termination cases in that involuntary termination required a finding by a clear and convincing evidence that the child "has been abandoned" or "substantially or continuously or repeatedly neglected or abused." KRS 199.603(1)(a) and (b).[1]

Before the enactment of the grandparents' visitation statute in 1976, it was a given that grandparents had no legal rights to visitation. *See Jouett v. Rhorer,* Ky., 339 S.W.2d 865, 868 (1960). While court decisions were in sympathy with the problems of grandparents where death or divorce had severed the tie to the custodial parent and grandparents' visitation was being denied, it was a statutory fact that grandparents could visit with their grandchildren only with parental permission. They had no standing to demand otherwise regardless of the best interest of the child.

The grandparents' visitation statute was an appropriate response to the change in the demographics of domestic relations, mirrored by the dramatic increase in the divorce rate and in the number of children born to unmarried parents, and the increas-

---

**1.** Grounds for termination in the new Kentucky Unified Juvenile Code, KRS 625.090, are like- wise severely restricted.

ing independence and alienation within the extended family inherent in a mobile society. The United States Supreme Court recognized the shift in the domestic relations scene in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We now recognize the rights of the natural, unmarried father and require "clear and convincing proof that [the natural father] had abandoned or substantially or continuously or repeatedly neglected or abused" the child before terminating his parental rights. *Wright v. Howard*, Ky. App., 711 S.W.2d 492, 497 (1986).

■ Nevertheless, the existence and extent of grandparents' rights is exclusively the prerogative of the legislature, and we are limited to interpreting and applying the statutory mandate.

■ Termination of parental rights, as provided for by statute, whether voluntary or involuntary, once legally adjudicated severs all relationship of parent and child as if the same had never existed. *Hill v. Garner*, Ky.App., 561 S.W.2d 106 (1977). The statutory reasons underlying the termination process relate to parental abandonment, neglect and abuse so substantial that the child must be legally cutoff from the parent. They justify a legal structure that provides finality and blocks every path to further litigation to reestablish a connection to parents whose rights have been terminated. Litigation by grandparents, by the family of such parents, would frustrate and circumvent the termination decree. The statutory language of severance required in the termination decree now expresses no exception, and none may be created by implying an exception from the grandparents' visitation statute.

The same rules and the same reasoning applied to the adoption statutes as a *general* proposition, with one exception. The tie-in between the two, termination and adoption, is explained in *Commonwealth, Dept. of Child Welfare v. Helton*, Ky., 411 S.W.2d 932, 934 (1967).

**2.** KRS 199.520(2) was amended in 1984 and 1986 to delete the word "legitimate," and to substitute for the word "natural" the word "bio-

In *Jouett v. Rhorer, supra*, wherein we interpreted parental rights vis-a-vis the effect of adoption where parental rights were terminated, we stated:

"It is our considered opinion the best interest and welfare of the child will be best served if it is permanently separated from all influence and contact with the natural father and his family." 339 S.W. 2d at 868.

We explained:

"[P]ublic policy demands that an adoption shall carry with it a complete breaking off of old ties.... [T]he retention by the natural parent, by virtue of court sanction, of any semblance of parental authority over an adopted child, which is taken from such parent by judicial decree, is repugnant to the very spirit of the Adoption Act." *Id.*

■ Unlike the termination statute, the statutory mandate in the adoption statute *does* provide for an exception. The same sentence that mandates that "an adopted child from the time of adoption shall have no legal relationship to its birth parents," first states an *exception* "where a natural parent is the spouse of an adoptive parent." KRS 199.520(2), effective 1974.[2]

The question before us is when does the grandparents visitation rights statute permit grandparents to seek to establish visitation rights *contrary* to the wishes of the custodial parents, and when is this statutory right cutoff by the termination and adoption statutes? As originally drafted in 1976, the grandparents' visitation statute was specific: it was limited to "grandparents of a child whose parent is deceased." The link to the grandchild had been cut by death but not by court decree and the statute prevented the surviving parent from denying grandparents visitation. We must assume that the 1976 grandparents' visitation rights statute was written with the language of the termination and adoption statutes in KRS Chapter 199 in mind. This includes the exception clause in KRS 199.-520(2) for stepparent adoptions.

logical." These changes have no substantive effect on subparagraph (2) for present purposes.

In 1984 the General Assembly expanded KRS 405.021 by deleting its limitation to the situation where the "parent is deceased," but it did not change the basic premise that it was subject to the overriding importance of the termination and adoption statutes to the welfare of children. No one in these cases has suggested that grandparents' visitation is in *pari materia* with termination and adoption; only that termination and adoption statutes should be construed to accommodate this new right of grandparents' visitation where the statute permits it and it is reasonable to do so.

Given the language of the exception clause in KRS 199.520(2) it is reasonable to interpret the meaning of the new statute, KRS 405.021, as extending grandparents' rights to seek court ordered visitation to cases where the surviving parent seeks to cut off the grandparents by using the device of stepparent adoption.

The exception clause in KRS 199.520(2) was structured in its present form in 1956. In *Arciero v. Hager*, Ky., 397 S.W.2d 50 (1965), involving a child who had been adopted by his mother's second husband, we interpreted KRS 199.520(2) to cutoff the child's right to inherit from his paternal great uncle. We stated:

> "We consider it plain that the quoted statute has the effect of excising the adoptive child from its 'blood' family tree.... [W]e regard that exception [for stepparent adoptions] as making it clear that the adopted child shall not lose its inheritance rights with respect to its natural parent who is a spouse of the adoptive parent." 397 S.W.2d at 52–53.

While this reasoning might have made sense in construing an earlier statute with more restrictive language (KRS 199.530 which was enacted in 1950 and repealed in 1956), with reference to the new 1956 statute the court's reasoning seems more result oriented than logical. It makes no sense to construe this clause making an exception in the case of a stepparent adoption as intended to preserve the child's relationship with the custodial parent who marries the stepparent, because nothing has occurred of a legal nature that could possibly be construed as cutting that relationship. In sum, either the exception clause means that in the case of a stepparent adoption where there hás been no prior termination of parental rights, the adoption standing alone does *not* sever the child from its blood ties to the natural parent who is no longer around, or it is meaningless. The natural parent who is marrying an adopting stepparent, i.e., the custodial parent, needs no statute preserving parental rights, so the only purpose for a statute preserving the blood connection would be to preserve ties to the family of a deceased or divorced natural parent. Of course, when *Arciero* was written there was no grandparents' rights statute on the books to be considered in weighing the meaning of the exception clause. We view *Arciero* as inappropriate in present circumstances, and overrule it.

■ The grandparents' visitation statute of 1976 was intended to give grandparents standing to obtain visitation if they can prove it is consistent with the child's best interest even though the surviving natural parent objects. Unlike cases where there has been legal termination of parental rights, in the cases involving only stepparent adoptions there is no reason to interpret the Adoption Act restrictively. To do so will permit the surviving natural parent and stepparent to circumvent the grandparents' visitation statute and cutoff grandparents' rights by effecting a stepparent adoption.

The overriding considerations expressed through the termination and adoption statutes for cutting, finally and irrevocably, all connections to the biological parent and his family where there has been a final order terminating parental rights and where there has been an adoption introducing the child into a new family, simply do not apply where there has been only a stepparent adoption with no prior legal severance of the bond to the grandparents.

We turn now from these general considerations to the facts of the three cases before us.

■ Glenn and Anna Rae Hicks are the paternal grandparents of two children whose parents were Alabama residents killed in a single tragic occurrence. Their death was followed by major warfare in the Alabama courts, first a custody battle between the Hicks' and the maternal grandparents in which the maternal grandparents prevailed, and thereafter contested adoption proceedings in which the Enlows, who are a maternal first cousin and her spouse, prevailed.

Alabama has a grandparents visitation statute which states, specifically, exactly as we have interpreted our grandparents visitation statute in this Opinion. It provides grandparents with a right to seek court ordered visitation with their grandchild after the death of their child with this "Exception: Visitation rights for grandparents do not apply if the minor child has been adopted by a person other than a stepparent...." Thus, because this was not a stepparent adoption, the Alabama proceedings ended with the Hicks' completely cutoff from their grandchildren.

The adoptive parents moved to Kentucky, and the Hickses renewed their legal battle in Graves County, seeking standing under our grandparents' visitation statute. The trial judge summarily dismissed their complaint on grounds that these grandchildren had no legal relationship with their paternal grandparents after the entry of the judgment of adoption in Alabama. The court held that the grandparents' visitation statute did not apply. The Kentucky Court of Appeals affirmed. We have accepted discretionary review and now we affirm for the reasons previously stated in this Opinion.

The Hickses have cited a number of cases from sister states all well reasoned, but critically different in essential facts: *Graziano v. Davis,* 50 Ohio App.2d 83, 361 N.E.2d 525 (1976), *Chavis v. Witt,* 285 S.C. 77, 328 S.E.2d 74 (1985); *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199 (1975); and *Petition of Nearhoff,* 359 S.E.2d 587 (W.Va. 1987). Unfortunately for the Hickses, in these cases, each interpreting the grandparents adoption rights statutes of their respective state vis-a-vis the adoption statutes, after the death of their child the surviving spouse had remarried and the adoption was by a stepparent, rather than a completely new relationship. These cases hold that a stepparent adoption does not cut off the grandparents' right to seek visitation under the grandparents' visitation statute in the particular state involved. Of course, in this Opinion we have so interpreted our own statutes, so that these cases do nothing more than reenforce the position we have taken.

But our statutes make no exception for cases other than a stepparent adoption, and we perceive no statutory distinction between the present case involving adoption by a cousin and her spouse after the death of both parents and one where the adoption was by strangers. Further, even if we were to perceive a difference, it is clear that the law of Alabama, where the adoption took place and all of these issues were fully litigated, permitted none.

In *Hicks v. Enlow,* as well as the other two cases presently before us, the grandparents complained of the injustice in having their claims dismissed summarily, advocating that the law should permit a hearing to decide in the best interest of the child. A trial of this nature is extensive and burdensome. The previous litigation in the present case is convincing evidence that there is sound policy in limiting the circumstances in which grandparents can seek a hearing on the merits to consider visitation. The limits to the use of courts as an arena to settle domestic strife are set by statute, and it is wise policy that these limitations should be respected. Grandparents rights do not extend to adoptions which are not stepparent adoptions, and therefore *Hicks v. Enlow* is affirmed.

■ In the next case, *C.H.R. v. Siegel,* the petitioner is a paternal grandmother whose son's parental rights to the infant were terminated by order of the Kenton Circuit Court. This was an involuntary termination on the basis of abandonment for a period exceeding five years. The child was made a ward of the state, and placed with the Cabinet for Human Re-

sources with authority to place the child for adoption. The present proceeding to establish the grandparent's visitation right was commenced almost two years after the order terminating parental rights was entered and about one month after the child's placement in her adoptive home.[3]

The grandmother's petition was summarily dismissed in circuit court, but the Court of Appeals reversed, holding the grandmother was entitled to a hearing to consider whether she should have visitation in the best interest of the child. We have accepted discretionary review, and for the reasons previously stated, we reverse the Court of Appeals and affirm the judgment of the trial court dismissing the action.

While we certainly sympathize with the feelings of the grandmother who has been cutoff from visitation with her grandchild by the involuntary termination of her son's parental rights, we recognize that the language of the termination statute completely severs the connection to the terminated parent and the connection through him to his family. The termination and adoption procedures are domestic relations considerations of overriding importance, and no exceptions for grandparents to the terms of the termination order required by statute should be implied where none are provided.

■ In *Howton v. Branson,* the third case before us, we are confronted with the case that fits the language of the statutory exception in the Adoption Act. The Bransons are the paternal grandparents seeking visitation with their granddaughter. The child was adopted by her stepfather by judgment in a separate proceeding instituted in the same court where the grandparents' visitation case was pending. The trial court entered judgment awarding grandparents' visitation rights which was appealed, and we granted transfer of the appeal so that this case could be considered along with the two cases previously discussed involving the same subject matter.

The trial court's "FINDINGS OF FACT, CONCLUSIONS OF LAW and JUDGMENT" recites the following findings of

fact: the Bransons are the natural grandparents of the child. Their son, the child's natural father, died on July 23, 1983, about six months before the child's birth, and the child's mother then lived in the grandparents' home from the time of the death of the child's father until three months after the child's birth. After mother and child moved from the grandparents' home, the mother continued to let the child visit and stay overnight with the grandparents until her marriage in June 1986. The grandparents were then refused visitation privileges. They filed this complaint and were awarded visitation privileges in the pending action. The stepfather then adopted the child, and the mother immediately stopped the court ordered visitation and moved that the grandparents' complaint be dismissed and future visitation disallowed relying on the language of the first sentence in KRS 199.520(2), previously discussed, specifying that after adoption "legal relationships to the adopted child's birth parents in respect to either personal or property rights" are cutoff. This position, of course, does not address the next sentence specifying the exception.

The trial court made the following analysis of the connection between KRS 199.-520(2) and KRS 405.021 with which we agree:

"[T]his Statute [KRS 199.520(2)], is primarily concerned with the situation where a child has been given up by, or removed from, his natural parents, and the rights of the adoptive parent were uppermost to be protected; however, this is not the circumstances in this case, it is not a termination case, but was brought about by the death of the natural father, so there was no one to contest it, and KRS 405.021, is more applicable to the case at hand."

The trial court then made a finding on the merits pursuant to KRS 405.021, using the "best interest of the child" standard, and the "rationale ... that the interest of the adoptive parent may be overcome, if the child will receive substantial and beneficial attention from the grandparents."

---

**3.** The child has been subsequently adopted.

The trial court made detailed findings of fact underlying its "opinion that the 'best interest of the child' will be served by the continued visitation rights of the GRAND-PARENTS," and the appellant has failed to establish that the trial court's findings were inappropriate, much less clearly erroneous. Therefore, we affirm the judgment of the trial court in *Howton v. Branson*.

STEPHENS, C.J., and COMBS, LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

GANT, J., dissents in one case, *Howton v. Branson*.