**Glenn DOTSON and Maxine Dotson, Appellants,**

v.

**Ralph ROWE and Tonya Marie Dotson Rowe, Donald Thomas Rowe, Angel Leigh Rowe, and Cabinet For Human Resources, Appellees.**

**Tonya Marie Dotson Rowe RICHARDS, Appellant,**

v.

**Ralph ROWE, Glenn Dotson, Maxine Dotson, Donald Thomas Rowe, Angel Leigh Rowe, and Cabinet For Human Resources, Appellees.**

Nos. 95–CA–000111–MR, 95–CA–002389–MR.

Court of Appeals of Kentucky.

Aug. 8, 1997.

Rehearing Denied Dec. 12, 1997.

Herbert Deskins, Jr., Pikeville, for Appellants Glenn Dotson, Maxine Dotson and Tonya Marie Dotson Rowe Richards.

Joseph W. Justice, Pikeville, for Appellee Ralph Rowe.

Before COMBS, EMBERTON and GARDNER, JJ.

## OPINION

EMBERTON, Judge.

The appellants, Glenn and Maxine Dotson, are the grandparents of Donald Thomas Rowe and Angel Leigh Rowe. They appeal from an order overruling their motion to intervene and set aside a decree terminating the parental rights of their daughter, appellant, Tonya Marie Dotson Rowe Richards. Tonya appeals from an order overruling her motion to set aside or vacate the decree on the basis that she was not properly served with summons.

Tonya was married to appellee, Ralph Rowe, in 1989 and two children, Donald and Angel, were born of the marriage. The couple divorced in 1991 with custody awarded to Ralph, and in 1994, the grandparents were awarded visitation.

Later in 1994, Ralph filed a petition for termination of Tonya's parental rights. Service on her was by warning order attorney; however, the notice was received by Tonya's brother. On May 4, 1994, the court ordered termination of her parental rights. The Dotsons were not named as parties to the termination proceeding, and on June 24, 1994, they sought to intervene and set aside the termination decree citing the failure to be joined as parties or to be given notice of the proceeding. The court held that the grandparents had no right to visitation following the termination of the parent's rights and denied the motion. Tonya's motion to set aside the termination on the basis of a lack of personal jurisdiction was also denied.

Prior to the enactment of Ky.Rev.Stat. (KRS) 405.021(1), a grandparent had no legal right to visitation. In order to respond to the changing dynamics of the familial relationship in today's society, KRS 405.021 now provides for grandparent's visitation in divorce proceedings if it serves the best interest of the child. *King v. King*, Ky., 828 S.W.2d 630 (1992). Prior to the current version of KRS 405.021, effective July 1996, the termination of parental rights severed all ties to the parental unit, including the extended family. As stated in *Hicks v. Enlow*, Ky., 764 S.W.2d 68, 71 (1989):

Termination of parental rights, as provided for by statute, whether voluntary or involuntary, once legally adjudicated severs all relationship of parent and child as if the same had never existed. The statutory reasons underlying the termination process relate to parental abandonment, neglect and abuse so substantial that the child must be legally cutoff from the parent. They justify a legal structure that provides finality and blocks every path to further litigation to reestablish a connection to parents whose rights have been terminated. Litigation by grandparents, by the family of such parents, would frustrate and circumvent the termination decree. The statutory language of severance required in the termination decree now expresses no exception, and none may be created by implying an exception from the grandparents' visitation statute. (Citations omitted).

In *Hicks* the court expressed sympathy for the grandparents in such cases, but concluded it was bound by the terms of the termination statute:

While we certainly sympathize with the feelings of the grandmother who has been cut off from visitation with her grandchild by involuntary termination of her son's parental rights, we recognize that the language of the termination statute completely severs the connection to the terminated parent and the connection through him to his family. The termination and adoption procedures are domestic relations considerations of overriding importance, and no exceptions for grandparents to the terms of the termination order required by statute should be implied where none are provided.

*Id.* at 74.

The consequences of denial of grandparent visitation after the parental rights of a parent have been terminated can be detrimental not only for the grandparent but, even more significantly, to the child who has already been denied the parental affection of one parent. The benefit of contact with the extended family was aptly recognized in *King, supra:*

If a grandparent is physically, mentally and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent. That grandparents and grandchildren normally have a special bond cannot be denied. Each benefits from contact with the other. The child can learn respect, a sense of responsibility and love. The grandparent can be invigorated by exposure to youth, can gain an insight into our changing society, and can avoid the loneliness which is so often a part of an aging parent's life.

*Id.* at 632.

The public policy reasons for permitting continuation of grandparent visitation following the termination of a parent's rights, prompted the amendment of KRS 405.021(1), which now states:

The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by termination of parental rights belonging to the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.

■ Clearly, the situation now before this court is one which the legislature intended the amendment to apply. Prior to the institution of the proceeding to terminate the parental rights of their daughter, the Dotsons were granted visitation rights pursuant to KRS 405.021. The facts suggest, that although termination of Tonya's rights was the direct relief sought, given the turbulent relationship between Ralph and the Dotsons, the termination of their visitation rights was not an unintended consequence. The intent of the legislature was to prevent a dispute between grandparents and parents from depriving the child of the love and affection of the grandparent.

■ The purpose of the amendment to KRS 405.021 was to change the existing law to which the courts, and undoubtedly litigants, had expressed displeasure. It was neither logical nor consistent with public policy to sever the child from an established grandparent relationship without first determining if such action was in the child's best interest. The statute is clearly remedial in nature. If it is in the child's best interest, it preserves grandparent visitation established prior to the termination proceeding. It is applicable to cases prior to July 1996, as well as those after the effective date of the amendment. *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33, 36 (1991).

■ The termination of Tonya's parental rights did not terminate or adversely affect the visitation rights of the Dotsons. Absent a finding that it is in the best interest of the child that such rights be denied, the visitation rights granted pursuant to KRS 405.021 remain.

■ Tonya argues that she was improperly served with process. KRS 625.070 provides that, if possible, service in termination cases is by personal service; since the parent often cannot be located, however, it expressly provides for constructive service. Ky. R.Civ.P. (CR) 4.05 provides that constructive service may be had on a party whose name or place of residence is unknown. CR 4.05(e). Tonya testified that she was not at her residence in Kentucky between January 1993, and October 1994, and the Dotsons were not aware of her location until October 1994. Constructive service on appellant was not only appropriate, but was the only means through which service could be made.

The order of the trial court is reversed in that it terminates the Dotsons' visitation rights. The order denying Tonya's motion to vacate or set aside the termination decree is affirmed.

All concur.