RENDERED: JANUARY 21, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0004-DGE

SHAYNE BLACKABY                                          APPELLANT

                          ON REVIEW FROM COURT OF APPEALS
V.                              NO. 2019-CA-0292
                          SHELBY CIRCUIT COURT NO. 18-CI-00486

NANCY BARNES                                            APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**REVERSING AND REMANDING**

The issue we must resolve in this case is the effect of a grandparent visitation petition filed by paternal grandfather, Appellant Shayne Blackaby, after his son's parental rights lapsed by virtue of his death, and after an adoption by the child's maternal grandmother, Appellee Nancy Barnes, had been finalized. The Shelby Circuit Court dismissed Blackaby's petition for grandparent visitation on grounds that he lost standing to seek formal visitation after the adoption of his grandchild had been finalized. The family court also found that Blackaby did not meet the stepparent exception established in *Hicks v. Enlow*, 764 S.W.2d 68 (Ky. 1989). The Court of Appeals affirmed. This Court then granted discretionary review.

After a thorough review of the record and applicable law, we conclude that the grandparent visitation statute, KRS[1] 405.021, does not contemplate the situation at hand and further, that the public policy considerations of the stepparent exception articulated in *Hicks* extend equally to an intra-family grandparent adoption such as this one. Accordingly, we reverse the Court of Appeals and remand this case to the family court with instructions to conduct an evidentiary hearing on whether Blackaby can prove, as required by KRS 405.021, that continued visitation would be in the best interests of the child.

## I.  Factual and Procedural Background

Blackaby is the paternal grandfather of K.N.B., who was born in 2012. K.N.B.'s father (and Blackaby's biological son), Timothy Blackaby, was incarcerated in early 2016. In February of 2016, K.N.B.'s maternal grandmother, Barnes, petitioned the family court pursuant to KRS 199.520 to adopt K.N.B., with the consent of K.N.B.'s mother, who also consented to the termination of her parental rights. Timothy, though incarcerated, contested the adoption petition through his appointed guardian ad litem.

Before the adoption was finalized, Timothy passed away on September 22, 2016. On October 23, 2017, the family court granted Barnes's adoption petition. Blackaby was never a party to the closed, confidential adoption proceeding. But prior to, during, and **after** the adoption Blackaby enjoyed regular visitation with K.N.B., including overnight visitation. In June of 2018,

---

[1] Kentucky Revised Statutes.

2

Barnes unilaterally stopped all visitation between K.N.B. and Blackaby. This prompted Blackaby in September of 2018 to petition the family court for grandparent visitation pursuant to KRS 405.021. He also requested an evidentiary hearing. The family court ordered the parties to brief the issues and, based on substance of the briefs, dismissed Blackaby's petition, finding that he lacked standing to seek visitation under KRS 405.021 because his grandparent rights terminated upon finalization of the adoption. While acknowledging that "the same rationale for a stepparent adoption not cutting off the tie to one side of the family, while preserving the other, applies here," the family court reasoned that "its hands are tied to the relevant case law, which is *Hicks*. The *Hicks* court makes it plain that '[g]randparents rights do not extend to adoptions which are not stepparent adoptions.'" 764 S.W.2d at 73.

The Court of Appeals affirmed, finding first that Blackaby never preserved the issue of visitation since he never formally objected, nor filed a motion to reconsider or a CR[2] 59.05 motion to alter, amend or vacate following the family court's dismissal of his visitation petition. Accordingly, the appellate court applied the palpable error standard for reviewing unpreserved claimed errors.[3] The Court of Appeals held that Blackaby's statutory right to

---

[2] Kentucky Rules of Civil Procedure.

[3] The Court of Appeals cited *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006), a criminal case, to support this statement. CR 61.02 is the palpable error rule for civil cases and is identical to the criminal rule. Kentucky Rules of Criminal Procedure (RCr) 10.26.

grandparent visitation under KRS 405.021 was foreclosed upon entry of the adoption decree, since Blackaby had not previously been granted visitation by the family court. The Court of Appeals further held that the facts of this case do not fall into the exception for stepparent adoption created by *Hicks*. Thereafter, Blackaby petitioned this Court for discretionary review, which was granted.

## II.     Standard of Review

Although the Court of Appeals made much of Blackaby's lack of "formal objection" or post-judgment motions, Blackaby's petition for grandparent visitation, as supported by his affidavit, clearly alerted the family court as to his desire for an extension of *Hicks* and the family court's order addressed the *Hicks* argument. Moreover, the family court order is plainly designated as a final and appealable order. Thus, from the record, the appellate court could have easily discerned that the visitation issue had been raised and addressed and that the matter was ripe for appellate review.[4]

---

[4] Additionally, we note that while the Court of Appeals was within bounds when it chastised Blackaby's counsel for noncompliance with CR 76.12(4)(c)(v), requiring stating the manner of issue preservation in an appellate brief, we find its application of the palpable error review standard to be misplaced, particularly since Barnes failed to submit a brief to the Court of Appeals. The penalties for failure to file a responsive brief are contained in CR 76.12(8)(c) and provide the following available remedies: "[T]he court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." Instead, the Court of Appeals fashioned its own remedy of applying palpable error review, which unfortunately guided the Court of Appeals' analysis.

4

Since we find Blackaby's visitation issue to be preserved, we will review the family court's findings of fact under a clearly erroneous standard of review, giving due regard to the opportunity of the family court to judge the credibility of the witnesses. *Walker v. Blair*, 382 S.W.3d 862, 867 (Ky. 2012) (citing CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986) (applying CR 52.01 to review of child custody cases)). We review the interpretation of KRS 405.021 like other issues of law – de novo. *Id.* at 867; *Morgan v. Tipton*, 569 S.W.3d 388, 396 (Ky. 2019) (issues of law are reviewed on appeal under a de novo standard).

### III. Analysis

Kentucky's adoption statute, KRS 199.520, severs all legal relationships with the biological families upon adoption of a child except when that child is adopted within the same family vis-à-vis a stepparent adoption. In this way, the law recognizes that a child adopted by a stepparent does not need to terminate all existing legal ties to biological family members to encourage a "fresh start" as is desirable in a new family adoption.

While KRS 199.520 does not address the rights of biological grandparents, nor circumstances such as the present in which the biological parent dies prior to an adoption terminating parental rights, this Court has explained:

> The overriding considerations expressed through the termination and adoption statutes for cutting, finally and irrevocably, all connections to the biological parent and his family where there has been a final order terminating parental rights and where there has been an adoption introducing the child into a new family, simply do not apply where there has been only a stepparent adoption with

5

no prior legal severance of the bond to the grandparents.

*Hicks*, 764 S.W.2d at 72.

At the time *Hicks* was rendered, the grandparent visitation statute, KRS 405.021 read:

> The circuit court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so.

In *Hicks*, this Court held that the termination of parental rights also terminates any grandparents' visitation rights, while carving out an exception for stepparent adoptions. 764 S.W.2d at 72. The grandparent visitation statute was amended in 1996,[5] partially to abrogate the harsh rule established in *Hicks*, and now includes language preserving grandparent visitation with a grandchild even after parental rights have been legally terminated, upon a showing that the grandparent had previously been granted visitation. KRS 405.021 was amended to include the additional protections:

> (1) (a) The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. **Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by the termination of parental rights belonging to the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.**

---

[5] Act of April 9, 1996, ch. 302, § 1; ch. 314, § 2, 1996 Ky. Acts.

(emphasis added).[6] This statutory amendment "demonstrates an attempt on the part of the legislature to balance the interest in finality of termination of parental rights with public policy reasons in favor of continued grandparent visitation." *E.D. v. Commonwealth, Cabinet for Health & Family Servs.*, 152 S.W.3d 261, 264 (Ky. App. 2004) (citing *Dotson v. Rowe*, 957 S.W.2d 269, 271 (Ky. App. 1997)). Indeed, it is "neither logical nor consistent with public policy to sever the child from an established grandparent relationship without first determining if such action was in the child's best interest." *Dotson*, 957 S.W.2d at 271. The paramount consideration in any matter involving a child is the child's best interest.

Because both adoption and grandparent visitation are purely statutory, our task is one of statutory construction. "The interpretation of statutes is a matter of law which we review de novo." *Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018) (citation omitted). Thus, "[w]e afford no deference to the statutory interpretations of the lower courts." *Id.* (citation omitted).

> In interpreting a statute, we have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. As such, we must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what

---

[6] In 2018, the General Assembly amended KRS 405.021 to expand protections for the grandparent-grandchild relationship. The 2018 amendment added subsection (b) to KRS 405.021(1) to provide: "If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child." However, while both Blackaby and the Court of Appeals discuss this rebuttable presumption, this Court has since held subsection (b) (as well as subsection (c) of KRS 405.021) to be unconstitutional. *Pinto v. Robison*, 607 S.W.3d 669 (Ky. 2020).

the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source. In other words, we assume that the Legislature meant exactly what it said, and said exactly what it meant.

*Id.* at 851 (citation omitted).

"Our rules of statutory construction, however, do not constrain us from commenting upon plainly-written statutes when oddities within them are exposed by the litigation before us." *Id.* The facts of the case before us expose the gaps in the adoption statute, the grandparent visitation statute, and our precedent in *Hicks* – gaps which here have resulted in an absurd and wholly unreasonable result that is contrary to the spirit and purpose of KRS 405.021. Neither the adoption nor the grandparent visitation statutes contemplated the present scenario in which one grandparent's adoption of a grandchild operated to divest another grandparent's existing relationship with that same grandchild, without consideration of the child's best interests. And neither statute requires notice to grandparents of a pending adoption petition initiated by another grandparent. Considering these statutory deficiencies, we believe extending the stepparent adoption exception in *Hicks* to grandparent adoptions is necessary.

Furthermore, the lower courts' emphasis on Blackaby's "delay" in waiting to seek formal visitation until after his son's death and after the adoption of his grandchild had been finalized begs the unresolved question of notice. Since Blackaby was not a named party to the adoption case, and had no legal right to be, expecting him to seek legal redress for a right he did not know was at risk is unreasonable. This conclusion is especially unreasonable given that his

8

visitation with the grandchild went uninterrupted during the pendency of the adoption proceeding, and even after the adoption had been finalized. This situation is further complicated by the fact that adoption proceedings are strictly confidential, KRS 199.570(1), so even if Blackaby had preemptively attempted to establish his formal visitation rights, he would have been unable to join that case or access any legal documents relevant thereto.

The current law does not oblige the family court or petitioning party to notify Blackaby of his grandchild's pending adoption, a proceeding which would adversely impact his statutory grandparent visitation rights per KRS 405.021 and deprive him of his continued visitation with his granddaughter. *See E.D.*, 152 S.W.3d 264–65 (holding that "KRS 405.021 requires a visitation order issued by the circuit court prior to the termination of parental rights of a grandparent's son or daughter to protect grandparent visitation rights with the children of that son or daughter[]"). Relying on *Hicks*, the family court understandably denied Blackaby standing to pursue visitation. The result in this case, however, is the unrealistic requirement that a nonadopting grandparent somehow discover the status of a confidential adoption proceeding, without receiving formal notice of it and without the ability to access the court adoption case file. Then, that grandparent must preemptively file a lawsuit to preserve visitation rights, even when visitation with the grandchild has remained uninterrupted. Here, Blackaby's filing of his petition for grandparent visitation was only triggered because Barnes suddenly halted the regular visits he was enjoying with his grandchild. Only at that point can

9

Blackaby reasonably be imputed with having knowledge that his ability and right to visit with his granddaughter might be at issue. Indeed, the record is void of any evidence that Blackaby sat on his rights or acted in a dilatory fashion in exercising his statutory right to grandparent visitation.

Society has long valued the unique and special relationship that exists between a grandparent and a grandchild. In this case we are not confronted with the situation of a child being adopted by non-biological parents, who were unaware of that child's prior visitation with a grandparent, who is now seeking visitation rights post-adoption. Thus, the oft-cited concern of a grandparent interfering with the fundamental right of parents, let alone adoptive parents, to rear their children is not present. Nor do we have a case of non-biological parents adopting a child and wishing to sever all ties with the child's biological family to further the stability of the adoptive family unit. Rather, here we have two biological grandparents who both enjoyed spending time with their grandchild, a child whose mother consented to her parental rights being terminated and whose father's parental rights were never formally terminated before his death.

To dismiss Blackaby's right to spend time with his grandchild, solely because he failed to secure a visitation order before Barnes formally adopted the child, is contrary to public policy as well as the spirit and intent of KRS 405.021. Blackaby appears to be K.N.B.'s only remaining tie to the paternal side of her family; to sever that tie without determining whether such severance would be in K.N.B.'s best interests is illogical and unjust.

10

In the absence of a comprehensive legislative fix addressing the ever-growing complexity of family units in the Commonwealth, and their competing social implications, we must read KRS 405.021 plainly and literally. As the judicial branch, we are not at liberty to write into a statute that which does not exist. That said, we do have the authority to extend the stepparent exception we recognized in *Hicks*, and we find it appropriate to do so.

We acknowledge, however, the limited record before us. We, thus, are unable to determine whether visitation between Blackaby and K.N.B. would be in the child's best interests. Given our determination that *Hicks'* stepparent exception should be applied to grandparents under the facts appearing in this matter, we remand this case to the family court with instructions to conduct an evidentiary hearing on the extent of Blackaby's relationship with the child and whether continuing that relationship would be in the child's best interests.

### IV. Conclusion

The Court of Appeals' decision is reversed, and this case is remanded to the Shelby Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Joseph Patrick Bowman
JOHNSON BEARSE, LLP


COUNSEL FOR APPELLEE:

Patrick Francis Graney
THE GRANEY LAW OFFICE, PLLC