Delmar Ray WRIGHT, Appellant,

v.

Vickie Darlene Sharp HOWARD & Husband Michael Wayne Howard, Appellees.

Court of Appeals of Kentucky.

May 23, 1986.

Louis M. Waller, Russellville, for appellant.

J. Gran Clark, Jr., Russellville, for appellees.

Before McDONALD, CLAYTON and DUNN, JJ.

DUNN, Judge.

This appeal is from the judgment of the Logan Circuit Court granting appellee Michael Howard's petition to adopt appellant Delmar Wright's 5 year old twin daughters. Howard is the present husband of the children's mother, appellee, Vickie Howard, Wright's former wife. Vickie's and Wright's marriage was dissolved July 14, 1981, by decree in the Logan Circuit Court before the same trial judge as in the instant adoption case. The twins' custody was granted to Vickie. She and Howard married on June 15, 1982. The twins have lived with them ever since.

Some aspects of the Wrights' dissolution action are pertinent to this appeal. The twins were 11 months old at the time the decree was entered. Its sole provision was that the Wrights' marriage was dissolved and they were restored to an unmarried status. The decree stated that Findings of Fact and Conclusions of Law had been entered, but did not incorporate it or make any other reference to it. The Wrights had signed an agreement that provided the twins' custody to Vickie until such time as Wright would begin to support them in a reasonable amount. The trial court provided that the issues of child support and visitation would be determined at a later date when in its conclusions of law in awarding the children's custody to Vickie it stated:

> ... the petitioner is the proper person to have the permanent care, custody and control of the infant children ..., and any questions concerning visitation or support ... are hereby reserved pursuant to the Agreement signed by the parties until a later date....

In her deposition for the dissolution action Vickie added dimension to the meaning of the agreement as reflected in the following questions and her answers:

....

17. And does your husband work?

A. Not that I know of.

18. Has he helped support these children in the last several months?

A. No.

19. Have you agreed that if he will not come about you and the children that you won't press for child support at this time?

A. Yes, sir.

Obviously, the trial court in approving this questionable custodial arrangement helped plant the seed of the tree that bore the fruit that the trial court later in this

adoption action labeled abandonment and neglect of the twins by Wright, who maintains he was bound by the trial court's pronouncement concerning visitation and support in the dissolution action. His efforts to acquire visitation thereafter were not successful. In fact his motion for visitation filed March 11, 1985, in the original dissolution action is still pending before the trial court.

Against this factual background concerning the Wrights' dissolution proceeding, the issues before us on this appeal are brought into sharper focus.

On February 15, 1985, the Howards, as petitioners, filed in the Logan Circuit Court what they styled a "Petition for Adoption and Termination of Parental Rights" of the twins. On April 5, 1985, the trial court entered its "Findings of Fact and Conclusions of Law" and pursuant to it on the same date entered its "Judgment of Adoption" of the twins and its "Order Terminating Parental Rights" of Delmar Wright to them.

■ He argues that the judgment is void because it is not supported by the evidence and because, since a judgment of adoption in and of itself terminates any meaningful legal relationship between the adopted child and its non-consenting party defendant natural parent, the treatment by the appellees Howards and the trial court of the alleged grounds for involuntary termination of his parental rights as a separate and distinct cause of action was contrary to the provisions of KRS Chapter 199. We agree and vacate the judgment, considering the combination of the so called "judgment of adoption" and "order terminating parental rights" as being one document that comprises the judgment.

■ It is appropriate for the sake of efficiency to first recite two basic rules regarding adoptions: 1) the right of adoption exists only by statute; and, 2) there must be strict compliance with the adoption

statutes. Failure to do so results in an invalid judgment. *Goldfuss v. Goldfuss,* Ky., 565 S.W.2d 441 (1978); *Juett v. Rhorer,* Ky., 339 S.W.2d 865 (1960); *Higgason v. Henry,* Ky., 313 S.W.2d 275 (1958). Though perhaps not specifically cited before or after in this opinion these two rules are applicable throughout it.

Among the many statutes governing adoption actions is KRS 199.500 titled "Consent to adoption". In pertinent part applying to our case [1] it mandates:

(1) No adoption shall be granted without the sworn consent of the living parent or parents of a legitimate child ...

It also provides for three specific exceptions by further providing:

... except that such consent of the living parent or parents shall not be required if:

(a) Such parent or parents have been adjudged mentally disabled ... for not less than one year prior to the filing of the petition for adoption;

(b) The parental rights of such parents have been terminated ...; or

(c) The living parents are divorced and the parental rights of one (1) parent have been terminated ... and consent has been given by the parent having custody and control of the child....

The statute in subsection (4) seemingly provides a 4th exception, but careful scrutiny reveals its provision is rather for a substitute for the parental sworn consent where the above three exceptions are not present and it is virtually impossible to procure the necessary sworn consents. In the manner of a "grandfather" clause subsection (4) provides:

(4) Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child if it is *pleaded and proved as a part of the adoption proceedings that* any of the provisions of subsections (1) or (4) of

---

**1.** This section also requires sworn consent of the "mother of a child born out of wedlock" and sometimes of the putative father.

KRS 199.603 [2] exist with respect to such child. (Emphasis added).

In the instant case, and in other similar cases where a child born in wedlock to now divorced parents is sought to be adopted by one of the parent's present spouse, and such parent's former spouse refuses to give his or her sworn consent, the practice of both terminating the recalcitrant former spouse's parental rights and granting the adoption is found acceptable by both the bar and bench of some of our judicial circuits. An inexplicable misunderstanding of the clear and unequivocal language of subsection (4) seems to be the root of this improper practice which in most instances results in failing to strictly comply with various adoption statutes.

In providing the subsection (4) substitute for consent, the legislature obviously was not concerned with terminating the non-consenting parent's parental rights. This could have been done independently of the adoption action and later bringing into play the above subsection 1(b) exception of KRS 199.500.

Besides, the adoption judgment itself terminates parental rights by virtue of the provisions of KRS 199.520(2) which provides:

(2) Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal consideration, *the natural, legitimate child of the parents adopting it the same as if born of their bodies.* Except where a natural parent is the spouse of an adoptive parent an *adopted child from the time of adoption shall have no legal relationship to its birth parents in respect to either personal or property rights.* (Emphasis added).

In this regard see also *Jouett v. Rhorer, supra,* wherein after reviewing the provisions of then KRS 199.530 (the predecessor statute to our present KRS 199.520) and of KRS 199.570 (the new birth certificate in adoptions statute) our former Court of Appeals commented at page 868:

(5) From the foregoing provisions of law it seems clear to us the Legislature intended that the adoption of a child necessarily brings to an end all connections, legal and personal, with any natural parent. If a child is subject to the parental control of two families—which are alien and often hostile to each other—the resulting injuries to the child's emotions and future well-being are a matter of deep concern to the public. It is for this reason so many courts have held that *public policy demands that an adoption shall carry with it a complete breaking off of old ties. We believe this is a sound view and we hereby adopt it.* Therefore we conclude the *retention by the natural parent, by virtue of court sanction, of any semblance of parental authority over an adopted child, which is taken from such parent by judicial decree, is repugnant to the very spirit of the Adoption Act.* (Emphasis added).

Since otherwise terminating the parental rights of the non-consenting parent would be unnecessary, we can only conclude the legislature in enacting subsection (4) intended to provide a substitute to sworn consent under circumstances not covered by the statute's exceptions without resorting to an independent action to do so.

In the instant case, as is the custom in similarly mistakenly pleaded cases where subsection (4) is misinterpreted, a "PETITION FOR ADOPTION AND TERMINATION OF PARENTAL RIGHTS" was filed by Michael Howard, Vickie's present

---

**2.** KRS 199.603(1) provides for termination of parental rights of a child if: "... (a) The child has been abandoned; or (b) The child has been substantially or continuously or repeatedly neglected or abused.
KRS 199.603(4) provides: "If the circumstances described in subsection (1), ... exist with re-

spect to only one (1) of the two (2) parents, the parental rights of that parent may be terminated, ... or if one (1) of the two (2) parents has wilfully, substantially, and continuously refused for a period of at least one (1) year to give or pay any support, the parental rights of that parent may be terminated...."

husband, seeking to adopt Vickie's twins from her former marriage to Wright who refused to give his sworn consent. Vickie joined with Howard as a joint or co-petitioner in the action in which they alleged in an obvious attempt to satisfy the requirements of KRS 199.500(4), that Wright "deserted said children and has not visited said children." They prayed not only for the twins' adoption by Howard, but also for Wright's parental rights to be terminated. As pointed out above, the prayer to terminate is unnecessary—the adoption itself terminates the non-consenting parent's parental rights. Allegation and proof of the grounds for involuntary termination suffices as a substitute for KRS 199.500 sworn consent and, assuming all other legal requirements have been met, without resort to an order terminating the parental rights of the recalcitrant father, the trial court then can enter a valid judgment of adoption containing only the mandatory findings of KRS 199.520, which is titled Judgment—Prerequisites—Order—Name and legal status of child. These statutory requirements can be satisfied by using in the judgment the exact language of the statute rather than resorting to a detailed recitation of those facts that go to make up the ultimate statutory requirements.

In filing the petition as a dual one for adoption and termination of parental rights, apparently in an attempt to satisfy the requirements of both the adoption statutes and the involuntary termination statute the appellee Howards, as do most others taking this mistaken procedural approach, failed to fullfill various requirements of the adoption statutes, their only real concern under proper interpretation of KRS 199.500(4) and application of the strict

compliance rule, and thereby caused the trial court to enter an invalid judgment.

Under this mistaken approach most of the adoption statute requirements with which the Howard's have not strictly complied are part of or centered about KRS 199.480 titled "Parties defendant in an adoption proceeding-Process-Guardian ad Litem." It requires:

(1) The following persons shall be made parties defendant in an action for leave to adopt a child:

(a) The child to be adopted;

(b) The natural living parents of a child under eighteen (18), if the child is born in lawful wedlock ...;

(2) *Each party defendant shall be brought before the court in the same manner as provided in other civil cases except that if the child to be adopted is under fourteen (14) years of age and the ... individual ... has custody of such child, the service of process upon such child shall be had by serving a copy of the summons in such action upon the ... individual, ... any provision of CR 4.04(3)* [3] *to the contrary not withstanding.* (Emphasis added).

(3) If the child's natural living parents, if the child is born in lawful wedlock, ... are parties defendant, no guardian ad litem need be appointed to represent the child to be adopted.

As already stated the twins' mother, Vickie, was joined as a petitioner in an apparent attempt to unnecessarily comply with the provisions of KRS 199.603(7) [4] to mistakenly involuntarily terminate Wright's parental rights under KRS 199.-500(4). As a result, several adoption statute requirements were not fulfilled. First, she was not joined as a defendant as re-

---

**3.** CR4.04(3) provides: "Service shall be made upon an unmarried infant or a person of unsound mind by serving his resident guardian or committee if there is one known to the plaintiff or, if none, *by serving either his father or mother within this state or,* if none, by serving the person within this state having control of such individual. *If there are no such persons enumerated above, the clerk shall appoint a practicing attorney as guardian ad litem who shall be served.* If any of the persons directed by this

section to be served is a plaintiff, the person who stands first in the order named who is not a plaintiff shall be served." (Emphasis added).

**4.** KRS 199.603(7) provides: "Proceedings under KRS 199.601 to 199.617 may be instituted upon petition by the cabinet, any child-placing agency licensed by the cabinet, any probation officer, any state or local law enforcement officer, any county or commonwealth's attorney *or parent.*"

quired by KRS 199.480(1)(b), *supra;* and, second, no service was had on her on the twins' behalf, as the individual having the twins' custody as required by KRS 199.-480(2), resulting in the twins not being before the court as defendants as provided in KRS 199.480(1)(a). The ersatz service on them through the guardian ad litem is of no effect since this CR 4.04(3) manner of service is statutorily excluded under KRS 199.480(2). Additionally, even under CR 4.04(3) this service is invalid since both the twins' mother and father stood before the guardian ad litem in the pecking order of the priority of persons to be served in infant service under the rule. The appointment of a guardian ad litem for the twins is additionally improper because their father is a defendant, their mother should be one, and pursuant to KRS 199.480(3), a guardian ad litem need not be appointed to represent the twins' interest.

■ Another major failure to comply with the adoption statutes is the failure to file the sworn consent of the twins' mother, Vickie, to their adoption as required in KRS 199.500(1). Under the strict compliance rule her execution of the verified petition for adoption is not sufficient for this purpose. *See Higgason v. Henry, supra.*

■ For the above reasons alone, based on non-compliance with the adoption statutes, the judgment of adoption, an integral part of which is the order terminating appellant's parental rights, should be vacated and the petition dismissed.

The result is the same even if the above reasons are not applied and we consider only the proof of the existence of KRS 199.603(1) or (4) provisions for involuntary termination of appellant's parental rights aspect of the trial courts findings to support the KRS 199.500(4) requirements that he either abandoned or substantially or continuously or repeatedly neglected or abused the twins. The trial court's findings in this regard are not supported by substantial evidence and thus are clearly erroneous and should be set aside. CR 52.01.

■ In order to justify finding the existence of KRS 199.603(1) or (4) grounds, the trial court was required to find from clear and convincing proof that appellant had abandoned or substantially or continuously or repeatedly neglected or abused the twins. *Santosky v. Framer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *N.S. v. C. and M.S.,* Ky., 642 S.W.2d 589 (1983). In the latter case as here the trial court in finding that appellant Wright had so misbehaved did not identify the standard of proof it applied in its finding, much less identify it as being by the *Santosky* standard of clear and convincing proof. We, as did our Supreme Court in *N.S. v. C. and M.S., supra,* find the omission by the trial court fatally defective as to this determination upon which its judgment is for a good part bottomed. The trial court's judgment entered in the light of all or each of the above violations of the adoption statutes' various provisions is invalid and should be vacated.

■ An identical conclusion also results from the fact a "Catch 22" situation for Wright was created in the Wright's dissolution action by the trial court putting on indefinite hold Wright's status to visit with the twins and his responsibility to support them. It denied his right to visit and required no support, all subject to further orders of the trial court. This status in both regards still exists. These "Catch 22" circumstances negate any finding that his so called abandonment, desertion or neglect was by clear and convincing proof that evidenced a settled purpose to forego all his parental duties and all parental claims to the children. Without such finding there can be no finding that KRS 199.603(1) or (4) grounds to involuntary terminate exist. *See D.S. v. F.A.H. and M.A.H.,* Ky. App., 684 S.W.2d 320 (1985), which also holds the clear and convincing proof standard of *Santosky* applies to KRS 199.500(4) sworn consent substitution adoption cases as well as to straight involuntary termination actions under KRS 199.603. *See also O.S. v. C.F.,* Ky.App., 655 S.W.2d 32 (1983). This reason alone would justify

**498**

vacating the judgment in all its aspects and dismissing the petition.

The judgment of the Logan Circuit Court is VACATED and the petition in its entirety is DISMISSED.

Further, pursuant to 2(a) of the Order Designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate rules of civil procedure for further appellate steps, are reinstated effective the date of this opinion.

All concur.