v.

**J.W.B., Biological Father, Appellee.**

**No. 2009–CA–001033–ME.**

Court of Appeals of Kentucky.

Feb. 5, 2010.

1. Pursuant to the policy of this Court, in order to protect the privacy of the parties involved in adoption matters, we refer to them only by their initials.

Allison B. Rust, Henderson, KY, for Appellant.

Susie H. Moore, Henderson, KY, for Appellee.

Before NICKELL and THOMPSON, Judges; GRAVES,[2] Senior Judge.

## OPINION

NICKELL, Judge.

S.B.B. (Stepfather) has appealed from an order of the Daviess Circuit Court denying his petition to involuntarily terminate the parental rights of J.W.B. (Father) to J.C.B., Father's minor son, and to adopt the child. The court's sole reason for denying the petition was Father's sporadic payment of child support by wage deduction over approximately eight years of the child's life. After a careful review of the record, we reverse and remand this matter for further proceedings.

Stepfather filed the instant action on October 31, 2008. Father, *pro se,* responded and indicated he was unwilling to relinquish his parental rights to J.C.B. Following two continuances to allow Father to obtain counsel, a hearing was held on Stepfather's motion with all parties being present and Father and Stepfather being represented by counsel. The trial court made findings of fact following the hearing that are uncontroverted on appeal. We will summarize the pertinent facts based upon the trial court's findings.

J.C.B. was born on October 13, 1998, to Father and S.M.B. (Mother). Father and Mother divorced in 2001 and Mother was granted sole custody of the child with Father being granted liberal visitation. Initially, no child support was ordered, but a supplemental order was entered requiring Father to pay the statutorily required amount. The support order has been enforced through the Henderson County Attorney's Office since July of 2001. By September 2003, Father was in arrears $3,244.82 on his obligation. The arrearage grew to $6,576.02 by March 11, 2005. As of April 2009, Father had paid $23,372.73 in support and was in arrears on his obligation in the amount of $8,048.73.[3]

Between 2001 and 2005, Father visited J.C.B. twice, with each visit lasting two to three hours. Mother made the child available for visitation, but Father repeatedly and continuously failed to follow through on scheduled visits. Father was given the child's baseball schedule and encouraged to attend the games, but he chose not to do so. Mother had the child contact Father by telephone several times, but no visitation resulted from such contacts. Father claimed he was unable to exercise his visitation because Mother moved frequently and he was unable to locate her. The trial court found Mother had not moved excessively; Father had her cellular telephone number; and he had contact information for Mother's parents. Further, Father knew Mother's place of employment as evidenced by his admission that he appeared there on numerous occasions

---

2. Senior Judge J. William Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

3. The amount of Father's child support arrearage at the time of the hearing could be calculated as exceeding twenty-six months.

under the guise of scheduling visitations even when Mother told him not to appear at her job. On his last visit to Mother's jobsite sometime in 2003, Mother refused to discuss further visitation plans and told him to seek a court order if he wanted specific visitation.

In 2005, Father moved for specific visitation with J.C.B. The trial court ordered that periodic visitation could occur for up to two hours in duration at a time. After the first visit, Father refused to participate in any further visitation. Father filed another motion in November of 2008 subsequent to the filing of the instant petition to terminate his parental rights. However, the trial court overruled this latest motion because the petition for termination of rights and adoption was pending. These two motions by Father constituted his only legal efforts between 2001 and 2008 to protect or enforce his rights to the child.[4] Father has not visited with or seen the child since 2005.

Father admitted he had a drug and alcohol addiction but that following his completion of in-patient treatment at the Healing Place in Louisville, Kentucky, his addictions were no longer problematic. However, it was revealed that as late as January 2009 Father had been arrested following a domestic violence incident with his current wife in which he was described as "drunk" in the police report.

Although the trial court found it would be in J.C.B.'s best interest to be adopted by Stepfather so he could legally become a part of the family with whom he had bonded and become integrated, it went on to examine the provisions of the statutory scheme regarding adoptions and termination of parental rights. The trial court stated KRS 199.470, *et seq.* controlled this matter and KRS 199.502(1) sets forth nine conditions, at least one of which must be plead and proved when an adoption is sought without the consent of a biological parent. The court found direct evidence had been presented on three of the nine conditions and an inference could be made regarding a fourth condition.[5] In its written order, the trial court stated:

24. The facts of this case most closely relate to the conditions of KRS 199.502(1)(a), (e), (g):

(a) That the parent has abandoned the child for a period of not less than 90 days;

(e) That the parent, for a period of not less than 6 months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expec-

4. A motion to set specific visitation and to grant Father a tax exemption for the child in alternating years was filed in 2003. Father did not appear at the hearing set for that motion and it was thus denied. However, at the hearing on the instant petition for termination of parental rights, Father denied filing the 2003 motion and indicated the handwriting and signature on documents shown to him evidencing the filing did not match his own. Based upon our review of the record, the purported signature does not appear to be that of Father. Nevertheless, the trial court believed the motion had been filed by Father or at his behest.

5. The trial court found "no direct evidence was presented as to the condition described in KRS 199.502(1)(c), that a parent continuously or repeatedly inflicted or allowed emotional harm to be inflicted upon the child...." The court found that in a similarly situated case, such a finding could have been made. However, because Stepfather has played an active role in J.C.B.'s life, he likely "has prevented any emotional harm that the child would otherwise have suffered by [Father's] neglect of his parental duty."

tation of improvement in parental care and protection, considering the age of the child;

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child.

25. This Court would find that all three of the foregoing conditions exists except for the fact that [Father] has paid child support in an amount exceeding $23,000.00 by continuous payments, albeit sporadic, less than required, and under duress. There is neither a reasonable expectation of improvement in [Father's] conduct in the immediate foreseeable future nor in the long term.

26. There is no reasonable basis to believe that [Father] will provide any parental care or protection for [the child] except for the child support by court order deducted from his wages.

27. Regardless of whether termination of [Father's] parental rights were sought under KRS 199.502, as here, or under KRS 625.090, this Court would grant the relief except for one fact, that is, that [Father] has paid $23,000.00 in child support over the years, albeit on a sporadic basis by wage deduction and notwithstanding that he is over $8,000.00 in arrears. As a matter of law the Court believes that this fact, and this fact alone, negates any finding under any of the conditions described in Paragraph 24 above.

Based on these findings, the trial court denied Stepfather's petition to terminate Father's parental rights. This appeal followed.

■ Stepfather contends the trial court erred in denying the petition for termination of parental rights for the sole reason that Father had sporadically paid child support. In support of this contention, Stepfather alleges the evidence presented to the trial court clearly supported findings that Father had abandoned the child; continuously or repeatedly failed or refused to provide essential parental care and protection for the child; continuously or repeatedly failed to provide essential food, clothing, shelter, medical care or education reasonably necessary and available for the child's well-being; and continuously or repeatedly inflicted emotional injury on the child or allowed the same to be done by other than accidental means. Stepfather contends paying court-ordered child support, without more, is insufficient to overcome the great weight of the evidence presented supporting termination of parental rights under the facts of this case. We agree.

■ Our review of actions involving termination of parental rights is confined to the clearly erroneous standard set forth in CR[6] 52.01, which is based on clear and convincing evidence. *W.A. v. Cabinet for Health and Family Services,* 275 S.W.3d 214, 220 (Ky.App.2008). As this Court has previously stated, clear and convincing proof does not mean uncontradicted proof. *Id.* Rather, it is sufficient if there is proof of a "probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *V.S. v. Com., Cabinet for Human Resources,* 706 S.W.2d 420, 424 (Ky.App. 1986) (quoting *Rowland v. Holt,* 253 Ky.

---

**6.** Kentucky Rules of Civil Procedure.

718, 70 S.W.2d 5, 9 (1934)). "In a trial without a jury, the findings of the trial court, if supported by sufficient evidence, cannot be set aside unless they are found to be 'clearly erroneous.' [CR] 52.01; *Stafford v. Stafford,* Ky.App., 618 S.W.2d 578 (1981). This principle recognizes that the trial court had the opportunity to judge the witnesses' credibility." *R.C.R. v. Commonwealth, Cabinet for Human Resources,* 988 S.W.2d 36, 39 (Ky.App.1998). We review the application of the law to the facts *de novo. Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001).

In the case *sub judice,* apparently the trial court felt constrained from terminating Father's parental rights under KRS 199.502(1)(a), (e), or (g), solely because some child support payments were being made. Our review of the applicable law convinces us authority is lacking for any such proscription, and we therefore reverse and remand this matter for further proceedings and additional findings.

■ Although payment of support is a significant factor in determining whether a parent has abandoned a child, *Hafley v. McCubbins,* 590 S.W.2d 892 (Ky.App.1979), it is but one factor to be considered. Abandonment is not actually defined in our jurisprudence in the context of termination proceedings. Rather, "abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.,* 655 S.W.2d 32, 34 (Ky.App.1983). *See also J.H. v. Cabinet for Human Resources,* 704 S.W.2d 661, 663 (Ky.App.1985) (same); *Kimbler v. Arms,* 102 S.W.3d 517 (Ky.App. 2003) (defining abandonment in the context of application of KRS 411.137 and

391.033, also known as Mandy Jo's Law [7]). The evidence presented to the trial court clearly reveals Father exhibited such conduct.

For instance, Father could not recall the custody arrangement from the initial custody decree; he was unsure of J.C.B.'s grade in school and assumed he was in "the fourth grade, possibly;" he did not know what grade the child was in when Father last saw him in 2005; he did not know what school or schools the child had attended; he was aware the child was interested in sports, but only because Mother had told him so; he failed to send J.C.B. Christmas or birthday cards or other written correspondence; he did not initiate or participate in telephonic communications with his son; he had no knowledge of the child's medical history; he had not seen the child for over three years prior to the hearing, nor had he made any attempts to initiate contact of any kind with the child; he made little, if any, effort to deduce an address or telephone number for the child or his caregivers; he had a significant and growing arrearage on his court-ordered child support; and he had numerous periods in excess of two months—some as long as nine months—in which he paid no support at all. When asked what he had done to be a father to the child, Father answered, "basically nothing other than pay obligated child support." Father did not communicate with his son's caregivers and did not demonstrate any interest in the boy's life during his critically important formative years. *See id.* at 522–23. These facts do not paint the picture of a man interested in the nurturing and upbringing of his son.

---

7. The two cited statutes from Mandy Jo's Law prohibit a parent from receiving any intestate succession from an abandoned child and further prohibit such a parent from maintaining a wrongful death action for an abandoned child or otherwise recovering for the child's wrongful death.

As Father correctly notes, abandonment must be based on more than mere failure to exercise visitation. Distance and inconvenience are no longer barriers to keeping in touch with others as modern technology has made communication ubiquitous and instantaneous, a blessing for absent parents. However, a vast distinction exists between absence and indifference. The facts of this case clearly evidence more than a simple failure to exercise visitation rights as Father urges us to conclude. Although father emotionally argues he absented himself from his child's life to address his addictions and other problems, Father made no attempt to contact his child and, in fact, did not see his son for more than three years before the filing of the instant action. Further, Father has seen the child only two times since 2001 for a maximum of just six hours. Father did not have telephonic or written communications with the child, did not provide any nurture or guidance, and utterly failed to be present in his child's life. Apart from the two visits, Father's only contact with J.C.B. has been his sporadic payment of child support through wage deduction, and his payment history indicates he is falling further behind in his obligation rather than retiring the past due amounts. No one is to blame for these failings but Father himself.

In light of these facts, we believe Father has clearly evinced an intention to abandon his child as the trial court impliedly found, but apparently incorrectly believed itself precluded from legally finding. Payment of support, though significant, is but one factor to consider among the totality of circumstances when determining parental abandonment. Although we are unconvinced, based on the facts of this case and the law of this Commonwealth, that merely paying child support on a sporadic basis is sufficient for Father to overcome his failures and retain his parental rights, such a determination must be made by the trial court. Thus, we remand this matter for further proceedings. On remand, the trial court is directed to determine, in accordance with the holdings of this Opinion and with appropriate citation to the record, whether Father's sporadic payment of support outweighs other important considerations in determining the propriety of terminating his parental rights.

Although this opinion has focused on the element of abandonment set forth in KRS 199.502(1)(a), our holding is likewise applicable to the trial court's rulings on the conditions set forth in KRS 199.502(1)(e) and (g). Thus, the trial court shall also determine whether Father's mere sporadic payment of child support is sufficient to negate a finding under those two provisions, again citing to applicable evidence in the record. We note that an affirmative finding under any one of these three statutory provisions is sufficient to support the termination of Father's parental rights.

For the foregoing reasons, the order of the Daviess Circuit Court is reversed and remanded for further proceedings consistent with this Opinion.

ALL CONCUR.