RENDERED:  MAY 2, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0749-ME

M.H.                                                                                    APPELLANT


v.          APPEAL FROM KENTON FAMILY COURT
            HONORABLE THOMAS A. RAUF, JUDGE
            ACTION NO. 22-AD-00101


J.S.; C.E.H., A CHILD; CABINET FOR
HEALTH AND FAMILY SERVICES;
AND R.S.                                                                        APPELLEES

AND

NO. 2024-CA-0750-ME

M.H.                                                                                    APPELLANT


v.          APPEAL FROM KENTON FAMILY COURT
            HONORABLE THOMAS A. RAUF, JUDGE
            ACTION NO. 22-AD-00102


J.S.; CABINET FOR HEALTH AND
FAMILY SERVICES; N.R.H., A
CHILD; AND R.S.                                                             APPELLEES

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE: These consolidated appeals arise out of judgments of adoption and termination of parental rights of a biological father to his two daughters. The matter has a long and rather convoluted procedural history, but ultimately, we find the circuit court made sufficient findings and affirm.

## BACKGROUND

M.H. ("Father") and R.S. ("Mother") are the biological parents of two minor children, N.R.H. and C.E.H. (collectively "the children"). Father and Mother were married to each other when the children were born, but they divorced in Boone County in 2013. Mother married J.S. ("Stepfather") nine years ago, and the children have lived with them continuously since that time. Mother was awarded custody, although Father initially had parenting time. However, in juvenile proceedings instituted in Boone County in 2013, there were allegations of abuse against Father that resulted in limitations on his visitation with the children. The record reflects there was no substantiation of these allegations, but the dependency, neglect, and abuse ("DNA") action was ultimately dismissed pursuant to an agreement in the parties' dissolution action with certain stipulations.

In 2016, a subsequent DNA action was filed in Kenton County, then it was transferred to Boone County where Father resides. In March 2021, Father stipulated to a finding of dependency and waived a dispositional hearing. In order for Father to resume contact, the court ordered Father to complete certain steps including therapy and an assessment by the Cabinet for Health and Family Services ("Cabinet"). However, it does not appear that this assessment ever took place.

In December 2021, the parties entered into an agreed order in the DNA action, which provided that all parties would undergo a reunification assessment with Shelton Forensics Solutions ("Shelton"). The agreed order further provided the parties would follow the recommendations of Shelton. In February 2022, Shelton submitted a detailed report and recommendation stating that reunification should not occur, and it was not in the best interest of the children to be reunited with Father. This report outlined several other recommendations and concerns. Father filed a motion before the Boone Family Court for reunification in July 2022, but then withdrew that motion. The prior no contact orders remained in effect, and all parties testified that Father has not seen the children since August 2020.

In August 2022, Stepfather filed a petition in the Kenton Family Court to adopt the children without consent of Father. Mother entered an appearance and

consented to the adoption by Stepfather. Father objected and, in May 2023, filed for parenting time in the Boone County dissolution action. That motion has yet to be heard due to the then pending adoption actions in Kenton County.

On November 16, 2023, the Kenton Family Court heard evidence relative to the termination of rights, resulting in entry of the findings of fact, conclusions of law, and orders in January 2024. The family court found that the grounds to grant an adoption without consent of Father were met by clear and convincing evidence and indicated the adoption hearing would be scheduled at a later date. The court stated therein that it was a final and appealable order. Father appealed to this Court, which dismissed the matter pending final judgments of adoption. The judgments of adoption were initially entered on May 24, 2024, but the findings and conclusions were unsigned by the court. This Court remanded for the family court to sign the findings and conclusions, which it completed in July 2024. These appeals are now ready for review.

## STANDARD OF REVIEW

These actions were brought pursuant to Kentucky Revised Statute ("KRS") 199.502, which permits an adoption without consent of the biological parent if any one of nine conditions exist with respect to the child. *See M.S.S. v. J.E.B.*, 638 S.W.3d 354, 364 (Ky. 2022). "Since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict

-4-

compliance with the procedures provided in order to protect the rights of the natural parents." *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997). "The standard of proof before the trial court necessary for the termination of parental rights is clear and convincing evidence." *V.S. v. Commonwealth, Cabinet for Hum. Res.*, 706 S.W.2d 420, 423-24 (Ky. App. 1986) (citations omitted). Clear and convincing evidence is not necessarily uncontradicted proof, but rather "proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Id.* (citation omitted). Our role as an appellate court is "confined to the 'clearly erroneous' review of the trial court's findings of fact based upon clear and convincing evidence, pursuant to CR[1] 52.01." *Id.*

Here, pursuant to KRS 199.502(1)(a), the family court found that Father abandoned the children for at least 90 days. The court further found that Father, for a period of more than six months, had continuously or repeatedly failed or refused to provide essential parental care and protection of the children and that there was no reasonable expectation of improvement in parental care, considering the ages of the children. KRS 199.502(1)(e). At the time of the family court's findings in 2024, the children were 12 and 15 years of age.

---

[1] Kentucky Rule of Civil Procedure.

**ANALYSIS**

On appeal, Father argues (1) the family court's abandonment finding was clearly erroneous because he was restrained by a no contact order; (2) the family court's findings that he failed or refused to provide for the care and custody of the children was also clearly erroneous; and (3) he asserts an attorney cannot represent both the biological and adoptive parents – referring to KRS 199.492 – because counsel for Stepfather in this action has represented Mother throughout the several other actions in Boone County.

In his first argument, Father asserts that a parent's failure to visit – when a court order did not permit visitation – cannot be used as a basis for a later finding of abandonment, relying on *Wright v. Howard*, 711 S.W.2d 492 (Ky. App. 1986). In *Wright*, this Court discussed a similar "Catch 22" dilemma. *Id.* at 497. In *Wright*, a court order "denied [the father's] right to visit and required no support" (subject to further orders), but then his failure to pay child support or visit the children resulted in findings of abandonment and neglect in a termination proceeding. *Id.* On appeal, this Court vacated the termination, in part, because the court order suspending visitation and support negated any finding that his abandonment or neglect was by clear and convincing evidence. *Id.* However, that was not the only rationale for the vacating opinion. *Id.* In fact, this Court vacated based on *several* failures to comply with the adoption statutes – not just the

abandonment finding – including a failure of the trial court to identify the standard of proof it applied in its findings. *Id.* at 497-98.

Applying *Wright*, the family court's abandonment finding would be improper if the sole basis for that finding was Father's failure to visit (in light of the no contact order). However, the family court *did not solely* rely upon the lack of contact or visitation for three years for its abandonment finding. In this case, the family court noted that Father did not make any attempts to have the no contact order modified or lifted from August 2020 until May 2023. He did ultimately file a motion in the dissolution action, but that was several months after this petition for adoption had been filed.[2]

Further, the no contact order was entered as the result of a stipulation to dependency by Father. He also entered into an agreement to undergo a reunification assessment and therapeutic interventions. That order provided the means for Father to seek visitation through the dissolution action or at the discretion of the Cabinet. However, Father chose not to take those steps. The record indicates Father did not undergo therapy or seek a reunification assessment throughout 2020 and 2021. Then, the parties entered into the December 2021 agreed order stating that the parties would follow the recommendations of Shelton,

---

[2] The family court noted there was one motion filed in Boone County in 2022, but it was withdrawn.

which were not in Father's favor. Those recommendations were released in February 2022. Still, he did not seek any parenting time until May 2023. He did not engage in therapy until two months before the hearing in November 2023. Father testified that he felt any pursuit of contact would be futile, but that does not excuse his apparent lack of effort to reinstate any relationship with the children.

In *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427-28 (Ky. App. 2015), a father "had participated in very little visitation and . . . ha[d] basically been disinterested in the child's upbringing" for three years. We held that the trial court's findings (based on these facts) were sufficient to support the determination the child had been abandoned pursuant to KRS 199.502(1)(a). *Id.* Further, despite the language in *Wright*, in *M.S.S.*, our Supreme Court held that "absence, [whether] voluntary or court-imposed, **may** be a factor to consider in determining whether children have been [abandoned]." 638 S.W.3d at 366 (emphasis added).

The family court herein considered that factor, among others. It noted that the children expressed strong feelings against having any relationship with Father. Even before the no contact order was entered, there was a very strained relationship, limited visitation, and alleged allegations of abuse by Father. While those allegations were not substantiated through criminal charges or a court finding of abuse, the Shelton report established that the children continued to have such strong feelings about Father that harm could result if visitation were required. The

extensive report from Shelton concluded that reunification would serve to inflict serious emotional distress upon the children. The children expressed fear and distrust of Father and extreme emotional concerns about any relationship with him. In the hearing before the family court, Father acknowledged he had, through counsel, agreed to utilize the services of Shelton. The agreed order specifically stated that the parties "shall follow the recommendations of the Shelton Forensic Solutions providers."

Pursuant to the agreed order of the parties in the separate action, the family court clearly and properly gave consideration to the findings and recommendations of Shelton. Those findings provide further support for the court's determination that "there is no reasonable expectation of improvement in parental care and protection, considering the age of the child." KRS 199.502(1)(e).

Secondly, Father argues he consistently paid child support, and this negates the family court's finding that he failed to provide parental care and protection for a period of six months or more. The evidence at the hearing did not dispute Father's payments over ten years. However, in *S.B.B. v. J.W.B.*, 304 S.W.3d 712 (Ky. App. 2010), this Court held that the father's payment of child support did not preclude the court from terminating parental rights based on abandonment. *Id.* at 715. In that case, the trial court had held that the "[f]ather's sporadic payment of child support" precluded it from granting a stepfather's

petition for adoption and termination of parental rights. *Id.* at 713. Our Court reversed, stating that payment of child support does not preclude a court from finding failure of parental care under one of the provisions of KRS 199.502. *Id.* at 716. Although payment of support is a factor in determining whether a parent has abandoned a child, it is but one factor to be considered. *Id.* at 717; *see also R.P., Jr.*, 469 S.W.3d at 427-28.

This case is troubling for many reasons, but we cannot substitute our view of the evidence, nor say that there was not proof of a probative and substantial nature sufficient to convince ordinarily prudent minded people. *See M.S.S.*, 638 S.W.3d at 365. The record contains sufficient proof to find by clear and convincing evidence that Father had abandoned the children and that there was no reasonable expectation that he could parent in the future, considering the ages and wishes of the children.

Finally, as his third argument on appeal, Father refers us to KRS 199.492. That statute states simply that "in an adoption proceeding, an attorney shall not represent both the biological parents and the prospective adoptive parents." *Id.* Doing so, per the statute, may constitute a class A misdemeanor offense. There is no apparent case law interpreting this statute. Father's argument, however, is that counsel for Stepfather had also represented the biological mother throughout the underlying DNA and dissolution actions in Boone County. While

not recommended, those were separate proceedings and that course of practice does not appear to violate the prohibition against representing both parties *in an adoption proceeding*. Furthermore, other than citing to the statute, Father does not present any authority or argument as to what relief **he** would be entitled to if a violation of this provision did occur. Finally, this argument was not presented to or decided by the family court in this action and thus, is not properly before this Court. An argument raised for the first time on appeal will generally not be considered. *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018) (citations omitted).

## CONCLUSION

For the reasons set forth herein, we AFFIRM the judgments of adoption of the Kenton Family Court.

ACREE, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE J.S.: |
|---|---|
| Michael W. Bouldin | Kelly Wiley |
| Covington, Kentucky | Newport, Kentucky |